We'll hear now from the parties in AEI Life v. Lincoln Benefit Life Insurance. Good morning, Your Honors. May it please the Court, my name is Jason Gosselin. I represent Lincoln Benefit Life Company. In a breach of contract action, the touchstone of the choice of law analysis is the reasonable expectations of the parties. And in some situations, the parties make it easy because they include a choice of law provision in the contract itself. And that's what we have in this situation. We have a life insurance policy or certificate that says that the policy will be subject to the laws of the jurisdiction in which the application was signed. The clause is not labeled choice of law. It's called conformity with state law, right? And it says the certificate is subject to the laws where the application is signed. If any part doesn't comply with the law, it will be treated by us as if it did. That doesn't look like an ordinary choice of law provision in contracts that I'm familiar with. It points to the law of a particular state and says without regard to its choice of law, we're going to be governed by the state of New York. The interpretation of this contract will be governed by the laws of the state of New York. Why can you say so unqualifiedly that this is a choice of law provision? I think subject to the laws of the state where the application is signed. Subject to is synonymous with governed by. I do agree. I would suggest that it would be governed by their choice of law rules, which doesn't necessarily mean that the law is going to be that of the state. I mean, if it's subject to New Jersey law, it's subject to New Jersey's choice of law rules. And choice of law in New Jersey is very similar to choice of law in New York. I mean, my point is the same as Judge Carney's. I don't see how a conformity clause necessarily equates to a choice of law clause. And you know that courts that have considered the question are split. And to that extent, if it's not clear, the ambiguity is going to be construed against your client who drafted the contract. I think that New Jersey's choice of law would certainly be incorporated within the laws of New Jersey. But I think the laws of New Jersey is broad enough to include choice of law plus the substantive law of New Jersey regarding insurance contracts and whatever else might apply to this particular insurance policy. And I understand that sometimes we have to look at a choice of law provision and apply it according to its terms. Sometimes it can be narrow. Sometimes it can be broader. And subject to the laws of New Jersey, I view as essentially synonymous with governed by the laws of New Jersey. You would disregard the title. Well, no. I mean, I think that it's a provision that has two sentences. One, I think, is a choice of law provision. The second sentence says if there's anything in this certificate that's inconsistent with the laws of New Jersey, then we will follow. It doesn't mention New Jersey at all, of course. Correct. It just says the state where the application was signed. So, again, unlike many choice of law provisions, it doesn't call out the name and identify the name of a particular state. And so there's further fact-finding to do about where the application was signed in order to even construe this, right? Well, yes. Well, actually, I don't think so. You don't have to look beyond this clause to determine what state applies? We have to look beyond the clause, but we don't have to look beyond the contract because the application is attached to the contract. The contract doesn't say that it will comply with the laws of the state where the parties represent it was signed. It's where the application was signed, a matter of determinative fact, which here was determined against you, by the way. Judge Weinstein found that it was signed in New York. The contract itself is the policy with the application attached to it on a choice... It doesn't say where the parties represented the application was signed. It says where the application was signed. Yes, it does. So, you see, your client drafted this contract, and if it was concerned that it didn't eyewitness where it was signed and maybe parties would misrepresent where it was signed, you could have drafted the contract to protect yourself from that possibility. But here, it's drafted in terms of, as a matter of historical fact, where was it signed. I would understand that you would have more of a grounds for concern if the party that misrepresented to you where it was signed now wanted the benefit of its misrepresentation. But you're litigating here against a bona fide owner that's a third-party owner. Your Honor, the way this life insurance policy and application works is the company gets an application, it has a provision that says signed at, it will then issue a policy consistent with the place... I understand that, but that wasn't what happened here. It wasn't signed where it was represented to have been signed. How do you ask us to do anything other than look to the plain language of the contract? Because when you're applying a choice of law provision, the policy itself, the provision, is clear on its face. We would never get to parole evidence. We only got to parole evidence because the court disregarded the choice of law provision and did a center of gravity analysis, and that's where we learned all of these facts. The policy itself, which includes a choice of law provision because the application is attached, on its face says it was signed at New Jersey. Now, it turns out that that was not accurate, but the policy itself is clear on its face, and we would never get to the center of gravity analysis. And the current policy owner, who stands in the shoes of the prior policy owner, would be stopped from coming in here and claiming something different that was in the application itself. That doesn't necessarily apply to a bona fide third-party purchaser. I mean... Why isn't a bona fide third-party purchaser entitled to the plain language of the contract? The third-party purchaser took its ownership through an assignment from the original owner and now stands in the shoes of that original owner, and its rights are no greater and no less than the original owner. So they're essentially stuck with the terms of the policy as negotiated by the original owner, which has provision that says it was signed at New Jersey. Could you tell me whether the record shows anything about the relationship between the broker who procured this policy and Lincoln? I understand that Lincoln is registered to do business in and can issue policies only in New Jersey, but this broker was dealing with people very much New York-based and received a commission. And, in fact, Lincoln has continued to accept premium payments on this, notwithstanding all of the New York contacts that are evident here. So I'm concerned about what is the effect of this cross-border issue from Lincoln's perspective. The broker here was representing the client, which was the owner, and that broker had an appointment with Lincoln Benefit to do business in New Jersey. So Lincoln Benefit actually appointed the broker to sell New Jersey product in New Jersey. Now, as it turns out, the person was not doing that. That broker was actually selling product in New York, and that's not something that Lincoln Benefit condones, and it's not something Lincoln Benefit knew about. Lincoln received premiums and continued to accept premiums on this policy. Well, Lincoln Benefit, once it learned what was going on, it filed a lawsuit challenging the validity of the policy. It takes the position that until the court declares the policy to be invalid, it will treat it as valid. It's not going to take its remedy before that remedy is declared by the court. Going a little further, is the broker effectively your agent in selling the product? No. Why not? Because, well, the broker is an independent contractor, a non-exclusive agent permitted to sell product for a multitude of companies. To the extent he's selling your contract, you expect him to ensure that it's done in compliance with your law. For instance, he operates out of New York. You're not licensed to sell insurance in New York, right? Correct. So he could only sell to people in New Jersey who signed in New Jersey. Now, he apparently knew that it wasn't signed in New York, and in that respect, isn't that his knowledge ascribed to you when he's selling your policy? No. He is an agent of the owner. The agent, in this case, because it was a Stolle case, it was actually other people. They retained this agent to go find an insurance policy. I don't know why. He's paid by the insured, not by the insurance company? No. He receives a commission from the insurance company. And so to that extent, I'm not sure why he isn't your agent. Obliged by his duties to you, he's telling you, yes, this is signed in New Jersey, and he's basically betrayed the trust you've placed in him. This issue wasn't really litigated at the district court, but the law in New York is fairly clear that a captive agent, an exclusive agent who sells product for an insurance company, will be the agent of the insurance company. A broker who's a non-exclusive agent retained by the owner to find the best product for that owner or that insured is considered an agent of the owner, not the insurance company. We had the latter situation here, not the former. Thank you. I'm going to please the Court. Jewel Rousseau for the appellee AEI Life, which is a bona fide purchaser of this policy. As the panel knows, life insurance is a heavily regulated, state-regulated industry. New York is the most strict regulatory state in the country and has the fewest number of life insurance companies licensed here because most companies like Lincoln Benefit don't like the strict regulation. Section 1101 of the New York Insurance Code defines what it means to do business. Among the things doing business in New York is to solicit residents to buy your policy and to issue for delivery a policy to someone who's a resident. Both of those things happened here. Judge Weinstein found they happened here. The agent had a contract with the insurance company. What he had authority to do was solicit. You may solicit people to buy our product. He did that. He did it in New York. You then are responsible. He wasn't. The contract didn't authorize him to do that. The contract didn't say anything about where he could do it. The contract said you are authorized to solicit our product and then to deliver our product. The testimony, Judge Weinstein said, I need to discover two things as a factual matter. At the hearing in August when he set up the life testimony, I want to know the center of gravity and I also want to know where was the contract signed, where was the application signed. Those are the two issues. He then found those issues. In doing so, he found it was solicited in New York. It was delivered in New York. Article 32, which is a broad article, it governs all life accident and health policies in New York, applies to any policy issued for delivery in New York or solicited in New York. There is no doubt New York law, this policy is subject to New York law. Article 32 applies to it. We have two hurdles to get over first. First is that your adversary says that you have a choice of law clause in this contract and the second is that the party from whom you basically acquire your rights is the party that misrepresented that it was signed in New Jersey and that you should no more be able to deny that than they could have been. So why don't you tell us how you clear those two hurdles? Well, I think the hurdle... Or with the choice of law question. And we've addressed that pretty broadly in our brief. It's not a choice of law. It's a conformity with law. Again, life insurance is state regulated. A policy issued and delivered in New York is subject to New York law. Have the parties agreed it might be subject to some other law as well? Possibly. I think if that clause had said, as Your Honor suggested, this policy will be subject to the law where the application states it was signed, now you would have a policy subject to both New York and New Jersey law. It's subject to the law. Has a policy ever invalidated kind of ab initio because it was issued by an entity that wasn't authorized to issue it in a particular place where the entity was, as it here, only authorized to do insurance work in New Jersey? The New York courts are very strict. They will enforce a contract against a carrier like Lincoln Benefit that does business in the state without a license. The regulator may impose penalties. The court may impose pre-answer security under Section 1213, but the policy itself is valid. It doesn't invalidate the policy at all. So the choice of law here is not a choice of conflict of law in a dispute over the terms of the policy. Because the policy is issued for delivery in New York and Article 32 applies, part of Article 32 is Section 3205, which mandates insurable interest for policies issued in New York, and it mandates certain remedies for lack of insurable interest. And, of course, the Court of Appeals has said repeatedly that insurable interest requirement is subject to the two-year requirement. Subject to 3205C3, I believe, which says the estate of the insured may seek at any time to collect the death benefit if insurable interest is violated. Those provisions are mandatory on this policy. Well, since you're mentioning that, I was intrigued by 3205C, which provides that no contract of insurance shall be made or effectuated unless the individual who's insured applies for a consent in writing to the making of the contract. There are two appellate division cases holding policies void ab initio, never came into existence, on proof that the application was not signed by the insured. Here, I didn't see any evidence that showed that the insured, that Gabriella Fisher had consented to being subject to the insurance policy, and I wonder what your view is about whether that just renders the policy void from the get-go. It does not. Under 3205C, given this case law. It does not for two reasons, because by virtue of the cases cited by Judge Weinstein in his judgment, the rule in New York is that consent requirement is also barred by the two-year incontestability. The cases that are cited by my opponent relate to imposter insurance that were never owned and taken out by the insured. Here, factually, what Lincoln Benefit has always wanted to overlook is Part 2 of its two-part application. Part 2 is a medical part that the insured not only signs but sits for a medical exam. That was done. The record is clear that she sat for a medical exam by a medical examiner appointed by Lincoln who drew her blood, took her urine, did other medical tests. If that's not consent to insurance, if that... But the provision provides you have to consent in writing. Correct. And we could argue about that, but what you're saying is that this provision will invalidate a policy from the get-go if it's a fraud in the application but not if it's no consent in writing. Correct. The only cases that have said this policy can't be enforced for lack of consent is where it was true imposter insurance. The Chosner case is the case. That's true imposter insurance. There was no involvement by the insured. Here, the district court has outlined all the involvement. The insured was part of this, as was her son, as was the agent who met with and solicited the both of them. So the evidence here, I think, was fairly clear of consent, but more importantly, it's not required in a case like this where she participated in taking out the insurance on factual findings of great distinction by the court as to exactly who did what, and particularly the medical exam. So I think, factually, you have it. Under those cases. So I think we come back to this was a New York policy. The agent was appointed. The evidence, the hearing from the witness for the insurance company was, well, we expect our agents in New York to know they have to do everything in another state, they can't do anything here, but we don't tell them anything. Not our job to tell them anything. We never gave this agent any direction. And the court was absolutely correct in finding that every element of transacting business took place in New York. It makes the policy subject to New York law. Probably the agent knew it because they signed it in New Jersey when they didn't. So the agent knew that he couldn't sell this policy in New York. I mean, here we have a situation where at least the facts could be construed that the insurance company got bamboozled. Your client bought this policy for whatever you paid for it and you're out all that money plus the premiums you've been paying. Why isn't the just result here is an unwind? I mean, to the extent you paid the premiums to the plaintiff, they give you back the money. To the extent you paid money to the defrauding insured, you sue them for the money. I mean, why is it that what happens here is you get to keep gambling on this woman's life? Several reasons, Your Honor. Number one is this is a policy delivered. The insurance company can say, well, they told us they signed in New Jersey. They delivered the policy and issued it for delivery in New York. That's a finding by the court. It's actually on the face of the policy delivered to a trust in New York that triggers Article 3200. This policy is governed by New York law despite what the company wants to say. Secondly, under New York law, it can't be challenged after two years. The argument you're making, Your Honor, can't be because New York law is very clear. Thirdly, that's an equitable position. It was argued, it was addressed by Judge Weinstein. He said, I'm not going to grant any equity. The company acted with latches. They took years and years and years of collecting premium, and what he said in the record was it would be unfair to the investor. Remember, my client, the investor, bought this under Article 78 of the Insurance Code, Life Settlement Act. It was a valid purchase under New York law of a policy over two years old. So it would be improper as a state regulatory matter to say we're somehow going to create an exception to incontestability in New York for fairness when the court says there's no reason for fairness in favor of the insurance company. Thank you. Mr. Goslin, you have a few minutes. Thank you. I want to go back to the notion about reasonable expectations of the parties. We have a contract, and the rule that the district court fashioned here, when you think about it, it's horribly broad and probably almost unworkable because the fraud exception to a choice-of-law clause is when the fraud relates to the choice of law, and that's because in those circumstances, the choice-of-law provision does not reflect the expectations of the parties. Here we have... You're assuming it's a choice-of-law clause, and you're assuming that it's a choice-of-law clause that New Jersey law is going to apply to every dispute, not even that it's going to be New Jersey's choice of law that governs. Because if New Jersey's choice of law governs, which is that you look to the state with the greatest contacts of the parties and the persons, the same as New York, you're going to be in New York. Well, I think because we're in New York, we have to go to New York's choice-of-law principles, and New York says that choice-of-law agreements are presumptively enforceable, so for that... My suggestion is to you that your construction of the conformity clause as a choice-of-law clause dictating that New Jersey's provision about incontestability controls is far from obvious. Well, the way we read it is that it is essentially a governing law clause. The validity of a contract would be subject to the laws of New Jersey, so whether this is valid or not would depend on what New Jersey law says about that. If we're not persuaded by that argument, what is the affirmative argument? We have arguments in our brief. I think one of the most important ones is the lack of consent. There is evidence here that Mrs. Fisher did not consent to this policy. She was given a copy of her application. She said, that's not my signature. She was asked... Does the record show that she participated in a medical examination with this policy in mind? Well, I mean, her testimony doesn't say that. There's a medical exam with a signature on it, but her testimony doesn't establish that it was her. The testimony on the application... Did she deny it? I don't know that she was asked that. Judge Weinstein didn't find her credible. Well... So the fact that she denied signing it is not something we can assume is true. For purposes of the consent, you must assume it was true because... Why? Judge Weinstein didn't find her credible. Because once he determined New York law applied and he's deciding their motion for summary judgment, we were entitled to the reasonable inferences. All factual inferences should have been construed in our favor. We had her testimony saying she didn't sign it and she didn't consent to it. We also had a handwriting expert said that there were forgeries. Judge Weinstein, though, took the position, and you'll have to tell us why he's wrong on this, that on this point he basically conducted a bench trial, and that therefore his fact findings are reviewable only for clear error. Yeah, that was for... What happened was we briefed the summary judgment. Judge Weinstein had oral argument. He then asked to come back because he was going to do this center of gravity test, and he wanted to take factual findings on the choice of law. He's entitled to do that. But once he decided New York law applied, he's looking at their substantive claims, and he was obligated to give Lincoln Benefit the reasonable inferences flowing from the facts. He said he was making fact findings as necessary to its choice of law determination and that it was the equivalent of a bench trial. Do you not agree that you got all the ability to litigate this that you would at a bench trial? I do not because we were entitled to a jury trial on that question. I went into that expecting that we were going to have factual findings on choice of law. You just said that he was entitled to do that. For purposes of choice of law. If there are facts questions that needed to be decided for choice of law, he can do that. And those were center of gravity facts that, I mean, all of those facts came out in the center of gravity analysis. Once he decided New York law applied, we had summary judgment motions, and our position was that she never consented and a jury should decide whether she consented. And we should have been able, if New York law applies, we should have been able to go to a jury on the substantive claims under New York law. Thank you. Can I ask just one? Yes, please. Just go back to the beginning. Conformity with state law, those words were in the contract? Yes. Well, conformity with the laws of the place where the application was signed is what it said. Is that a heading? It's a heading. Yes, yes. But not governing law or just conformity? Right. I mean, it didn't use the word governing. It said subject to. Okay. Thank you. I think there can be a big difference between the two. Thank you. We'll take this case under advisement.